UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY

UNITED STATES OF AMERICA,

    Plaintiff.

v.                                                                                             Civil Action No.:   5:23-cv-393

$168,849.42 SEIZED FROM FIRST COMMUNITY BANK, ACCOUNT NUMBER XX:2781;
$299,604.40 SEIZED FROM FIRST COMMUNITY BANK, ACCOUNT NUMBER XX:2660;
$2,333,832.28 CASH FROZEN FROM ALLY INVEST SECURITIES, LLC, ACCOUNT NUMBERXXX-X6295-11 RRA34;
$45,000.00 SECURITIES FROZEN FROM ALLY INVEST SECURITIES, LLC, ACCOUNT NUMBERXXX-X6295-11 RRA34;

    Defendants *in rem.*

### VERIFIED COMPLAINT FOR FORFEITURE IN REM

COMES NOW, Plaintiff, United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, and alleges as follows:

### I.   INTRODUCTION

1. This is a civil action for forfeiture in rem, pursuant to 18 U.S.C. § 981(a)(1)(A), (1)(C), the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Case Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, and 18 U.S.C. § 985, to forfeit assets that theft of government funds, theft of stolen funds across state lines, wire fraud, and money laundering in violation of 18 U.S.C. §§ 287, 641, 1343, 1956, and/or property traceable to such property (the "Defendant Assets"). The Defendant Assets also are involved in monetary transactions in violation of 18 U.S.C. § 1957, laundering of monetary instruments exceeding $10,000.

2. The Defendant Assets, which include 4 Defendant Accounts totaling approximately $2,847,286.10 in value are more particularly described as:

1

"Defendant Assets"

(i) $168,849.42 seized from First Community Bank account number XX2781 ("personal account 2781");

(ii) $299,604.40 seized from First Community Bank account number XX2660 ("R&R account 2660");

(iii) $2,333,832.28 cash frozen from Ally Invest Securities, LLC, account number XXX-X6295-11 RR A34 ("Ally XXX-X6295-11"); and

(iv) $45,000.00 securities frozen from Ally Invest Securities, LLC, account number XXX-X6295-11 RR A34 ("Ally XXX-X6295-11").

3. This action seeks forfeiture of all rights, title and interest in the above-captioned Defendant Assets because the properties constitute or are derived from proceeds of theft of government funds, theft of stolen funds across state lines, wire fraud, and money laundering in violation of 18 U.S.C. §§ 287, 641, 1343, and 1956. The Defendant Assets also are involved in monetary transactions in violation of 18 U.S.C. § 1957, laundering of monetary instruments exceeding $10,000.

4. In March 2020, in response to the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act""). *See CARES ACT* § 1102, 134 Stat. at 286 (codified as amended at 15 U.S.C. § 636(a)(36)). The CARES Act authorized the Small Business Administration ("SBA") to provide low-interest loans to small businesses, also known as the Economic Injury Disaster Loan ("EIDL"). SBA's EIDL program provides small businesses with working capital loans of up to $2 million to help overcome the temporary loss of revenue.

**II.   JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter. See 28 U.S.C. §§ 1345, 1355(a).

6. This Court has in rem jurisdiction over the Defendant Assets. See 28 U.S.C. §§ 1345, 1355(a).

7. The Defendant Assets have been seized and are in the custody of the United States, except Ally XXX-X6295-11 which is currently restrained by the United States.

8. Venue for this action is proper in the Southern District of West Virginia because acts or omissions giving rise to the forfeiture occurred in this District. See 28 U.S.C. § 1355(b)(1).

### III.   FACTUAL ALLEGATIONS

9. Ross Bailey ("Bailey") obtained thousands of dollars in proceeds in the Defendant Assets, captioned above, and engaged in theft of government proceeds, and engaged in transactions in violation of the money laundering laws, including transactions that promoted his illicit activities, namely his wire fraud. Bailey also used the accounts to attempt to conceal the fraud.

10. Bailey violated 18 U.S.C § 641 (theft of government funds), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 666 (theft or bribery concerning programs receiving Federal funds), 18 U.S.C. § 1956 (laundering of monetary instruments), and 18 U.S.C. § 1957 (laundering in monetary transactions in property derived from specified unlawful activity exceeding $10,000).

11. Bailey resides within the Southern District of West Virginia, Cool Ridge, Raleigh County, West Virginia.

12. Bailey is a 100% Shareholder, of R&R Delivery Inc. ("R&R"), an S Corporation.

13. R&R is a West Virginia corporation incorporated in 2005 at the West Virginia Secretary of State's Office and the principal place of business is in Raleigh County, West Virginia, which is in the Southern District of West Virginia.

### THE ECONOMIC INJURY DISASTER LOAN PROGRAM

14. The Economic Injury Disaster Loan Program ("EIDL") is a United States Small Business Administration ("SBA") program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

15. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

16. To obtain an EIDL loan, a qualifying business is required to submit an application to the SBA and to provide information about the business's operations, such as the number of employees, and revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019 to January 31, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

17. EIDL loan applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL loan were issued directly by the SBA.

18. EIDL loan funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL loan funds could not be used for the same purpose as the PPP loan funds.

19. SBA's Amended Loan Authorization and Agreement includes the following language regarding any potential civil and/or criminal penalties:

> Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines, imprisonment or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 1040, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015.

## RELEVANT LENDING INSTITUTIONS

20. Lender A and Bank 1 (First Community Bank) were financial institutions insured by the Federal Deposit Insurance Company ("FDIC") and Bank 1 was an approved SBA lender of PPP loans.

21. Lender B is the United States Small Business Administration.

## BANK ACCOUNTS CONTROLLED BY ROSS BAILEY

22. Bailey maintained the following bank accounts:

   (a) named as authorized signer on R&R account XX2660 in the name of R&R whose headquarters is in Man, West Virginia;

   (b) named as authorized signer on personal account XX2781;

   (c) named as authorized signer on personal account XX3137;

   (d) named as authorized signer on personal brokerage account number XXX-X6295-11 RR A34 maintained at Ally Invest Securities, LLC whose headquarters is in Charlotte, North Carolina.

   (e) named as authorized signer on an account carried by APEX Clearing whose headquarters is in Dallas, TX.

### FIRST EIDL LOAN for $150,000.00

23. On or about June 25, 2020, Bailey on behalf of R&R electronically applied for an EIDL loan for $150,000.00 with SBA. SBA approved the loan application.

24. On or about July 8, 2020, the SBA sent $150,000.00 in EIDL loan proceeds via an ACH transfer to R&R account XX2660. On or about June 30, 2020, Bailey electronically signed a Loan Authorization and Agreement. Bailey also signed the note to the SBA as the owner of R&R and uploaded the DocuSign Loan Document to SBA.

25. Bailey represented in the Loan Authorization and Agreement that he would use the proceeds of the EIDL Loan solely as working capital to alleviate COVID related economic injury.

26. These EIDL loan proceeds are not being considered as part of this forfeiture action.

### SECOND EIDL LOAN OF $350,000.00 (First Modification)

27. On or about August 9, 2021, Bailey on behalf of R&R electronically applied for an EIDL loan modification for $350,000.00 with SBA. SBA approved the First Modification of the EIDL loan, increasing the amount from $150,000.00 to $500,000.00.

28. On or about August 31, 2021, Bailey electronically signed an Amended Loan Authorization and Agreement. Bailey also signed the note to the SBA as the owner of R&R and uploaded the DocuSign Loan Document to SBA. On or about

September 9, 2021, the SBA sent $350,000.00 in EIDL loan proceeds via an ACH transfer to R&R's account XX2660.

29. Bailey represented in the Amended Loan Authorization and Agreement that he would use the proceeds of the EIDL Loan solely as working capital to alleviate COVID related economic injury.

30. These EIDL loan proceeds are not being considered as part of this forfeiture action.

### THIRD EIDL LOAN OF $1,500,000.00 (Second Modification)

31. On or about February 22, 2022, Bailey on behalf of R&R electronically applied for a second modification to the EIDL loan with the SBA, increasing the loan amount by an additional $1,500,000.00.

32. Bailey did not have to submit an additional EIDL Loan Application for the first or second modification due to SBA applying the information contained in the initial EIDL Loan Application.

33. SBA approved the Second Modification of the EIDL loan, increasing the amount from $500,000.00 to $2,000,000.00.

34. On or about February 25, 2022, Bailey electronically signed an Amended Loan Authorization and Agreement for Application Number 3306574670.

35. On or about February 25, 2022, the SBA approved the requested EIDL loan modification. The SBA Loan # is #6296888002.

36.     Bailey signed the note to the SBA as the owner of R&R and uploaded the DocuSign Loan Document to SBA.

37.     On or about March 1, 2022, SBA sent $1,500,000.00 in EIDL loan proceeds via an ACH transfer to R&R account XX2660.

38.     Bailey represented in the Amended Loan Authorization and Agreement that he would use the proceeds of the EIDL Loan solely as working capital to alleviate economic injury.

39.     Instead of using the EIDL funds for permissible purposes, Bailey used the EIDL funds to personally enrich himself by transferring these funds to his personal bank accounts and/or to personal investment accounts.

## IMPROPER USE OF EIDL LOAN PROCEEDS

40.     On or about 3/8/2022, Bailey transferred $700,000.00 from the R&R account XX2660 to his personal account XX2781.

41.     On or about 3/9/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

42.     On or about 3/11/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

43.     On or about 3/14/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

44.     On or about 3/15/2022, Bailey transferred $30,000.00 out of his personal

account XX2781 to Ally XXX-X6295-11.

45. On or about 3/17/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

46. On or about 3/18/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

47. On or about 3/23/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

48. On or about 3/24/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

49. On or about 3/25/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

50. On or about 3/29/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

51. On or about 3/29/2022, Bailey wire transferred $700,000.00 out of R&R account XX2660 to APEX Clearing.

52. On or about 3/30/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

53. On or about 3/30/2022, Bailey authorized APEX Clearing to wire transfer $699,970.00 to R&R account XX2660.

54. On or about 3/31/2022, Bailey wire transferred $700,000.00 out of R&R

account XX2660 to APEX Clearing.

55. On or about 4/1/2022, Bailey authorized APEX Clearing to wire transfer $699,970.00 to R&R account XX2660.

56. On or about 4/1/2022, Bailey transferred $700,000.00 from R&R account XX2660 to his personal account XX2781.

57. On or about 4/5/2022, Bailey wire transferred $700,000.00 out his personal account XX2781 to Apex Clearing.

58. On or about 4/22/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

59. On or about 4/27/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

60. On or about 4/29/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

61. On or about 5/6/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

62. On or about 5/10/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

63. On or about 5/13/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

64. On or about 5/18/2022, Bailey transferred $30,000.00 out of his personal

account XX2781 to Ally XXX-X6295-11.

65. On or about 5/19/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

66. On or about 5/24/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

67. On or about 5/27/2022, Bailey transferred $30,000.00 out of his personal account, XX2781 to Ally XXX-X6295-11.

68. On or about 5/31/2022, Bailey transferred $30,000.00 out of his personal account XX2781 to Ally XXX-X6295-11.

## CONCEALMENT BY TRANSFERRING FUNDS AT END OF TAX YEAR

69. On or about 12/30/2022, Bailey authorized APEX Clearing to wire transfer $1,600,000.00 to his personal account XX2781.

70. On or about 12/30/2022, Bailey then transferred $1,600,000.00 out of his personal account XX2781 to R&R account XX2660.

71. On or about 01/06/2023, Bailey transferred $1,500,000.00 out of R&R account XX2660 and back to his personal account XX2781.

72. On or about 01/10/2023, Bailey also transferred $600,000.00 out of R&R account XX2660 to his personal account XX2781.

73. On or about 01/11/2023, Bailey also transferred $200,000.00 out of R&R account XX2660 to his personal account XX2781.

74.     On or about 01/11/2023, Bailey then transferred $2,000,000.00 out of his personal account XX2781 to Apex Clearing.

## IV.     BASIS FOR FORFEITURE

### Count One—Engaging in False, fictitious or fraudulent claims

75.     The United States incorporates by reference paragraphs 1 through 74 above as if fully set forth herein.

76.     Pursuant to 18 U.S.C. § 287, it is a federal crime to "make[] or present[] to any person or . . . to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent. . ."

77.     As set forth above, Bailey knowingly made false, fictitious or fraudulent claims to the United States, and the Defendant Assets were involved in transactions or attempted transactions in violation of 18 U.S.C. § 287, false, fictitious or fraudulent claims, and/or constitute property traceable to such property.

78.     Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

79.     Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

80. Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### Count Two—Public money, property, or records

81. The United States incorporates by reference paragraphs 1 through 80 above as if fully set forth herein.

82. Pursuant to 18 U.S.C. § 641, it is a federal crime to "embezzle[], steal[], purloin[], or knowingly convert[] to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof[.]"

83. As set forth above, Bailey knowingly stole or knowingly converted to his use or use of another without authority money of the United States made or being made under contract for the United States in violation of 18 U.S.C. § 641, public money, property or records.

84. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

85. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

86. Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### Count Three—Fraud by wire, radio, or television

87. The United States incorporates by reference paragraphs 1 through 86 above as if fully set forth herein.

88. Pursuant to 18 U.S.C. § 1343, it is a federal crime to "devise[], or intend[] to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire. . .in interstate or foreign commerce. . .for the purpose of executing such scheme or artifice. . ."

89. As set forth above, Bailey devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343, fraud by wire, radio, or television.

90. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

91. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

92. Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### Count Four—Laundering of monetary instruments

93. The United States incorporates by reference paragraphs 1 through 92 above as if fully set forth herein.

94. Pursuant to 18 U.S.C. § 1956, it is a federal crime "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—(a)(i) with the intent to promote the carrying on of specified unlawful activity; or . . .(B) knowing that the transaction is designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity."

95. As set forth above, Bailey knew the Defendant Assets represented the proceeds of unlawful activity and knew that the transactions were designed in whole or in part to conceal or disguise the nature, location, the source, the ownership, or the control of the Defendant Assets of specified unlawful activity in violation of 18 U.S.C. § 1956, laundering of monetary transactions.

96. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

97. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting

'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

98. Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

### Count Five—Engaging in monetary transactions in property derived from specified unlawful activity

99. The United States incorporates by reference paragraphs 1 through 98 above as if fully set forth herein.

100. Pursuant to 18 U.S.C. § 1957, it is a federal crime to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified activity."

101. As set forth above, Bailey knowingly engaged or attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000.00 and was derived from specified unlawful activity in violation of 18 U.S.C. § 1957, engaging in monetary transactions in property derived from specified unlawful activity.

102. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. §§ 1956 and 1957], or any property traceable to such property" is subject to forfeiture to the United States.

103. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to any violation of . . . any offense constituting 'specified unlawful activity' . . . , or a conspiracy to commit such offense" is subject to forfeiture to the United States.

104. Accordingly, the Defendant Assets and all property traceable thereto are subject to condemnation and to forfeiture to the United States, in accordance with 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

## V.  CONCLUSION

105. By virtue of the foregoing and pursuant to 18 U.S.C. $ 981(f), all right, title and interest in the Defendant Assets vested in the United States at the time of the commission of the unlawful acts giving rise to forfeiture has become and is forfeitable to the United States.

WHEREFORE, Plaintiff, the United States of America requests that: the Clerk of the Court issue warrants for arrest of Defendant Assets ($168,849.42 seized from First Community Bank, account number XX2781; and $299,604.40 seized from First Community Bank, account number XX2660; except for $2,333,832.28 cash frozen from Ally Invest Securities, LLC, account number XXX-X6295-11; and $45,000.00 securities frozen from Ally Invest Securities, LLC, XXX-X6295-11 that this Honorable Court issue a warrant for the arrest of Ally Invest Securities, LLC, account XXX-X6295-11; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Assets; that the Defendant Assets be forfeited and condemned to the United States; and such other and further relief as it deems proper and just.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney

By:   /s/Christopher R. Arthur
CHRISTOPHER R. ARTHUR (W.Va. Bar # 9192)
Assistant United States Attorney
300 Virginia Street, East, Room 4000
Charleston, WV  25301
Telephone:  304-345-2200
E-mail: chris.arthur@usdoj.gov

## **VERIFICATION**

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, TO-WIT:

I, Timothy C. Butler, financial forensics investigator from the Office of the West Virginia State Auditor's Financial Forensics Team—Public Integrity and Fraud Unit, detailed to the Office of the United States Attorney in the Southern District of West Virginia, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture in rem is based upon reports and information I have gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on May 17, 2023.

Timothy C. Butler

Taken, subscribed and sworn to before me this 17th day of May, 2023.

Evaline Bennett Cooper
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
Evaline Bennett Cooper
1690 Carey Place, Charleston, WV 25314
My Commission Expires April 30, 2026

My commission expires on April 30, 2026.